265 So.2d 125

**Lynn McArthur TRAHAN**

v.

**John Joseph COOK, Jr.**

**I Div. 711.**

Supreme Court of Alabama.

July 20, 1972.

Brown, Hudgens, Fulford, Sintz & Richardson, Mobile, for appellant.

M. A. Marsal and Howell, Johnston, Langford & Findbohner, Mobile, for appellee.

HARWOOD, Justice.

John Joseph Cook, Jr., worked as a book-keeper and an accountant. He had an arrangement with Bernie R. Smith, who operated an automobile body repair shop, whereby he did the bookkeeping for Smith in return for the use of an office in the body repair shop. At times Cook would help with other services around the shop. He also rendered bookkeeping and accounting services to other firms and individuals.

On 30 April 1970, he drove with Smith in Smith's truck to pick up a Mercedes auto-mobile and bring it to the shop in order to repair a fender. On the return trip to the shop, Smith drove the Mercedes and Cook followed in the truck. Their return route was by way of Airport Boulevard.

Airport Boulevard crosses Interstate Highway 65 as an elevated viaduct, and beyond the bottom of the descent of the viaduct and on its eastern side there is a traffic light controlling traffic into and out of the entrance road to a shopping center parking lot.

The side of the Boulevard on which Cook and Smith were travelling consists of three traffic lanes. Smith, in the Mercedes, stop-ped in the center lane at the traffic light which was red against him, and Cook stop-

ped the truck some 15 to 25 feet behind the Mercedes, in the same lane.

While waiting for the light to change, Smith glanced in the outside rear view mirror of the Mercedes and saw an automobile top the viaduct some 100 yards to his rear at what Smith testified, without objection, was an excessive speed. Before he could do anything the automobile crashed into the truck driven by Cook, which in turn was knocked into the Mercedes driven by Smith.

The force of this impact knocked the truck into the middle of the intersection, and the Mercedes all the way across the intersection. This offending automobile, a 1969 Oldsmobile, was driven by Mrs. Lynn McArthur Trahan.

The force of the impact knocked the truck engine loose from its motor supports and the engine came up through the hood, and the truck was just "pancaked." The back of the cab of the truck was bowed backward where Cook's head had hit, and the glass was broken.

The Mercedes was damaged to the extent that everything from the rear doors backward had to be replaced.

The front end of the Oldsmobile automobile driven by Mrs. Trahan was demolished. The air conditioner of the Oldsmobile was buried in the back of the cab of the truck.

Cook filed suit against Mrs. Trahan. His complaint was in two counts, one in negligence, and the second alleging wantonness.

The jury trial resulted in a general verdict for Cook, damages being assessed at $15,000.00, and judgment was entered pursuant to the verdict. Mrs. Trahan's motion for a new trial being overruled, she perfected this appeal from both the judgment and from the order overruling the motion for a new trial.

In the trial below the plaintiff Cook presented only three witnesses, himself, Bernie R. Smith, and Willie Edward Sellers. Sellers' testimony was directed solely toward Cook's physical condition before and after the collision.

The defense offered no testimony. Although Mrs. Trahan was placed in the witness box, she was immediately withdrawn by her attorney before any questions were addressed to her, and the defense rested. The attorney for the plaintiff was not thereafter permitted to question her.

In addition to the facts already set out above, Smith testified that in the traffic court hearing Mrs. Trahan had testified that the brakes had failed on her Oldsmobile. He further testified that he and a police officer had examined the Oldsmobile after the collision and he could find nothing wrong with the brakes, and that all late model automobiles have a double action braking system and if one part of the master cylinder goes out, two of the brakes will still work. Smith found no skid marks on the Boulevard after the collision.

Immediately after the collision Smith went to the truck. He found Cook "everything but knocked out." He then went to Mrs. Trahan's car and administered to her. An ambulance soon arrived and Mrs. Trahan was taken to a hospital. Cook "had kind of regained consciousness" and refused to go in the ambulance and said he would go to a doctor. Smith had known Cook well for a number of years. Prior to the accident he was a very active person. Since the accident he has been very nervous, and complains of headaches all the time, " * * * he is just not the same person."

Willie Edward Sellers had known Cook for thirty years. Cook was an active outdoorsman prior to the accident. Since the accident he complains of headaches. Once he took Cook fishing on his boat subsequent to the accident and Cook developed a headache and had to "go inside" and lie down.

The plaintiff Cook testified that about two hours after the collision he went to see Dr. Guy Rutledge. At this time he had an ache in the front part of his head. Dr. Rutledge made X-rays and gave him a

prescription. His neck and shoulders were sore for a few days. However, he now develops headaches about once a week, particularly when lying down, or when he is out in the sun. His neck also pains him "when he thinks about it." He demonstrated the movements of his neck which would cause pain.

Prior to the accident he carried on his work as a bookkeeper, not only at the body shop but for other clients. He was also an active hunter, and fisherman.

Since the collision he has had to curtail his outside activities, and has had to drop some of his bookkeeping work, being unable to turn out as much work as he did before his injury.

Prior to the accident Cook testified, he had never suffered from headaches. He was never one to take medicine, and for this reason he did not have Dr. Rutledge's prescription filled since he was informed that it contained a drug.

Cook has consulted Dr. Rutledge some seven times, and Dr. Cominick twice concerning his headaches.

Counsel for appellant has argued four points as constituting error, (1) the court's refusal of appellant's motion for a new trial on those grounds going to the sufficiency of the evidence to support the verdict, (2) the refusal of two written peremptory charges to the effect that the jury could not find for the plaintiff under the wanton count of his complaint, (3) the overruling of appellant's objection to a portion of the argument of counsel for the appellee commenting on the appellant's failure to testify, and (4) the excessiveness of the damages.

We will first consider those assignments asserting that the court erred in overruling appellant's motion for a new trial because of the refusal of appellant's written peremptory charges as to the wanton count.

In brief counsel for appellant writes: "However, there is not one single inference from any shred of evidence in the record of the trial of this case which would in any way infer that the defendant was guilty of wantonness, as charged in Count Two of the complaint." We disagree.

Wantonness has been defined in innumerable opinions of this court and we will not belabor this opinion by any extensive review of these cases. In the final analysis it is the application of the legal principles of wantonness to the factual situation presented in each case that must control.

In Merrill v. Sheffield Co., et al., 169 Ala. 242, 53 So. 219, it is stated:

"To constitute wanton negligence, there must be a design, purpose, or intent to do a wrong, or reckless indifference or disregard of the natural or probable consequences of the act done."

In Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505, it is stated:

"Knowledge need not be shown by direct proof. It may be made to appear, like any other fact, by showing circumstances from which the fact of actual knowledge is a legitimate inference."

The evidence tends to show that the appellant drove over the viaduct portion of Airport Boulevard at a speed described as excessive; shopping centers were in the area and traffic was to be expected and was regulated by traffic signals; a red traffic light was ahead of her with an automobile and a truck awaiting the change of the light. The traffic light itself was a "proclamation of danger." Lewis v. Zell, 279 Ala. 33, 181 So.2d 101. All these things the appellant knew, or should have known. Despite all these conditions, the appellant struck the truck, which in turn struck the automobile, with such speed and force as to knock the truck into the middle of the intersection and the automobile all the way across the intersection.

Clearly it was within the province of the jury to draw inferences as to the speed with which appellant's vehicle struck

a stationary one where the stationary vehicle is knocked a considerable distance by the impact with devastating result to all the vehicles involved, i. e., the truck, the automobile immediately in front of the truck, and the appellant's automobile.

■ We hold that the lower court did not err in refusing the peremptory affirmative charges requested by the appellant as to the wanton count. We further hold that we would not be justified in concluding that the evidence as to wantonness so greatly preponderates against the jury's verdict as to reasonably justify us in declaring that the verdict was wrong and unjust. The court therefore did not err in denying the motion for a new trial on those grounds going to the sufficiency of evidence to support the verdict in the aspect of the wanton count. Having reached this conclusion, we perforce reach the same conclusion as to the negligence count relative to the sufficiency of the evidence to support that count.

During his argument to the jury, counsel for the plaintiff-appellee twice referred to the appellant's failure to testify. Objections of counsel for the appellant to such argument were overruled.

It appears that after the request of appellee's counsel to question the appellant upon her withdrawal from the witness box before having any questions propounded to her, the court informed counsel for the appellee that he could reopen the case and place the appellant on the stand as his witness. This proposal was declined by counsel for the appellee.

Counsel for appellant argues that since the appellant was in court and therefore equally available as a witness to both parties, the court erred in overruling his objections to the argument of appellee's counsel.

■ We find no merit in this contention. Counsel for appellee was fully warranted in declining to reopen the case and place the appellant on the stand as his witness,

thus vouching for the credibility of appellant's testimony.

■ Counsel for appellant agrees that the general rule established by our decisions is that in civil actions, the failure of a party to a suit, when present at the trial, to testify as to a fact in issue, furnishes a legitimate ground for comment in argument by the opposite party. Morris v. McClellan, 154 Ala. 639, 45 So. 641; Hinton & Sons v. Strahan, 266 Ala. 307, 96 So.2d 426.

However, counsel for appellant argues that this general rule should not govern in the posture presented in this case, i. e., the declinations of counsel for appellee to reopen the case and place the appellant on the stand as appellee's witness. Counsel for appellant argues that consideration of the point now being considered should be governed by the doctrine that a party may not comment to the jury on his opponent's failure to call a particular person as a witness to testify to a material matter, unless the evidence warrants a finding that such witness is not equally available to both parties. See McElroy, Law of Evidence in Alabama, 2nd. Ed., Vol. II, Section 191.01 (1).

The fallacy of appellant's argument is that a witness closely related to one of the parties by blood is presumed to be hostile to an opponent of his close relative, and in this sense is not considered equally "available" to both parties. Waller v. State, 242 Ala. 1, 4 So.2d 911. Certainly it follows that a party himself to a suit must be deemed hostile to his opponent in litigation and therefore not equally available or accessible to both parties as a witness.

■ No error therefore flowed from the action of the court in overruling appellant's objections to the comments of appellee's counsel to the jury relative to appellant's failure to testify in the trial below.

Lastly, appellant argues that the court erred in denying appellant's motion for a new trial on those grounds asserting that the damages awarded were excessive.

**710**

Evidence introduced by the appellee tended to establish medical expenses of some $95.00, and that he lost some 13½ hours from work in visiting doctors. The appellee fixed the value of his time thus lost at $5.00 per hour.

Appellant's argument that the damages are excessive seems to be based on the assumption that the evidence is insufficient to support the wanton count, and therefore the damages must be referred to the negligence count. We say this for the reason that the cases cited by the appellant in support of his argument on this facet of this appeal pertain to damages awarded under negligence counts rather than wanton counts.

The instant verdict was general, and therefore referable to either or both counts of this complaint.

It is clear from the amount of damages awarded by the jury that over and above the proved special damages of some $162.50 at most, the remainder of the damages awarded must be considered as punitive in nature.

 Under a wanton count compensatory and punitive damages, or both, may be recovered. Davis v. Smitherman, 209 Ala. 244, 96 So. 208; Foster v. Floyd, 276 Ala. 428, 163 So.2d 213; Dekle v. Vann, 284 Ala. 142, 223 So.2d 30. Punitive damages, under appropriate circumstances and conditions, may be awarded as punishment (Marigold Coal Inc. v. Thames, 274 Ala. 421, 149 So.2d 276), and to deter other transgressors. Bowles v. Lowery, 5 Ala. App. 555, 59 So. 696.

Damages that may be awarded as punitive damages are in a large measure discretionary, within reasonable bounds, and unless the amount awarded is so excessive, or so inadequate as to indicate prejudice or passion, the rule is not to reverse. Where the trial court refuses a new trial because of alleged excessive damages, the favorable presumption attending the verdict of the jury is thereby strengthened.

International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (UAW–CIO) v. Palmer, 267 Ala. 683, 104 So.2d 691, and cases cited therein.

Considering the wrongful conduct of the appellant as revealed by the evidence, and the reasonable inferences to be drawn therefrom, and the necessity of deterring, or at least discouraging others from similar conduct on public highways, we are unwilling to say that the trial court erred in not granting the new trial on the grounds of the alleged excessiveness of the damages awarded.

Affirmed.

HEFLIN, C. J., and MERRILL, COLEMAN, and MADDOX, JJ., concur.