These cases, consolidated before the Court, seek review of two decrees of the Jefferson County Circuit Court awarding damages to Protective Life Insurance Company and the Commissioner of Insurance for the State of Alabama. The proceedings below arose because of Appellant's, Shearn Moody, Jr.'s, continued violation of an injunction.
When Empire Life Insurance Company became undercapitalized, it was placed in *Page 1118 
receivership and reinsurance was approved through Protective. Moody, as Empire's president and principal stockholder, refused to accede to such reinsurance and filed several suits to prevent and harass the receivership action. See, e.g., Allmonv. Book-out, Civ.Act. No. 74-377-N, United States District Court for the Middle District of Alabama. The Commissioner obtained an injunction on January 6, 1975, to prevent the filing of new suits or the amendment of any pending causes concerning Empire's receivership. Moody's continued violation of this injunction, and other orders of the trial Court, and his attempts to circumvent the Court's authority, have led to citations for both civil and criminal contempt. Moody v. Stateex rel. Payne, 351 So.2d 552 (1977); Moody v. State ex rel.Payne, 351 So.2d 547 (1977); State ex rel. Payne v. Empire LifeIns. Co. (Ex parte Moody), 351 So.2d 538 (1977); Moody v. Stateex rel. Payne, 344 So.2d 160 (Ala. 1977); and Moody v. State exrel. Payne, 295 Ala. 299, 329 So.2d 73 (1976).
On July 30, 1976, subsequent to related hearings, the Commissioner, as Receiver of Empire, filed his petition seeking recovery for damages incurred by Moody's willful violation of the January 6 injunction. Service was obtained by mailing copies of the petition to Moody's attorneys of record in the receivership proceeding. No personal service upon Moody was attempted.
Trial began on November 29, 1976, and the jury returned a verdict assessing compensatory damages in the amount of $50,000 and punitive damages in an equal amount. The trial Court ordered remittitur in the amount of $13,000 and entered judgment.[1]
The second of the two cases, consolidated herein, began on August 19, 1976, when Protective filed its claim seeking compensatory and exemplary damages occasioned by Moody's contemptuous acts. As in the Commissioner's suit, service was obtained only upon Moody's attorneys of record.
Because of Moody's failure to respond to Protective's discovery efforts, a default judgment was entered on October 19. At that time, pursuant to Rule 55, ARCP, the Court set a date for a non-jury determination of damages. The Court awarded compensatory damages of $36,508 and punitive damages of $100,000. Additionally, attorneys' fees incurred in the civil contempt proceedings, in the sum of $32,000, were awarded; and $7,500 was awarded as attorneys' fees in the criminal contempt proceedings. It is in this posture, then, that these two suits come before us.
 I.
The controlling question, raised in both cases, concerns whether a party who sustains damages as a result of another's contemptuous acts may recover for his damages without instituting a separate action. We recently considered this question in Lightsey v. Kensington Mortgage and Finance Corp.,294 Ala. 281, 315 So.2d 431 (1975). After discussing the law of other jurisdictions, Lightsey held that where there is a violation of a valid restraining order, and such violation proximately results in damages to the aggrieved party, such injured party is not without remedy. Our holding in Lightsey
stated the procedure to be followed:
 ". . . we do not see the necessity of requiring the aggrieved party in such an instance to pursue his remedy in another suit; but . . . we believe either party on demand would be entitled to a jury trial on the issue of damages. We perceive of no reason why this cannot be afforded in the same proceeding on petition of the aggrieved party seeking damages after a finding by the trial court that the opposite party is in contempt. A jury would be impaneled to hear the evidence on such petition and determine whether damages, compensatory or punitive, should, under the usual rules, be imposed." 294 Ala., at 288, 315 So.2d at 437. *Page 1119 
Thus, we specifically held that the damages hearing is part of the main proceeding. Because this is true, and as is shown by our holding quoted above, the Alabama Rules of Civil Procedure apply to the damages hearing. It is equally clear, pursuant to Rule 5 (b), ARCP, that in personam jurisdiction, having once been obtained in the original proceeding, need not be re-established. (In this case, in personam jurisdiction was obtained by Moody's intervention in the receivership action.)
Moreover, logic and the integrity of our court system dictate that, having once submitted himself to the jurisdiction of this State, Moody cannot prevent application of legitimate orders of this State's courts by merely absenting himself to some foreign jurisdiction. See Ex parte Moody, supra. Therefore, the Court had jurisdiction over this cause, and service was properly obtained upon Moody's attorneys of record. State ex rel.Brubaker v. Pritchard, 236 Ind. 222, 138 N.E.2d 233 (1956);Caplow v. Eighth Judicial District Court, 72 Nev. 265,302 P.2d 755 (1956); and 17 Am.Jur.2d, Contempt, § 87.
 II.
Thus viewed, we must now determine whether it is proper to include attorneys' fees as part of the compensatory award. Moody's contention that these attorneys' fees are not recoverable is fallacious; and this for the reason that, as a proximate result of Moody's contempt, both Appellees have been forced to expend large sums of money in the defense of illegal suits and in the investigation and prosecution of the contempt proceedings.
As a general rule, and in the absence of contractual or statutory provisions, attorneys' fees are not recoverable either as costs of litigation or as an element of damages.State v. Alabama Public Service Commission, 293 Ala. 553,307 So.2d 521 (1975); Hartford Accident Indemnity Co. v. Cosby,277 Ala. 596, 173 So.2d 585 (1965); and Taylor v. White,237 Ala. 630, 188 So. 232 (1939). There are, however, a number of exceptions to this general rule. One widely-accepted exception, and one which we specifically accept, is that in proper circumstances a reasonable attorney's fee may be allowed the prevailing prosecuting party in a civil contempt proceeding. This award, though not mandatory, is allowed within the sound discretion of the trial Court. Toledo Scale Co. v. ComputingScale Co., 261 U.S. 399, 43 S.Ct. 45, 67 L.Ed. 719 (1923);Arvin, Inc. v. Sony Corp. of America, 215 Va. 704,213 S.E.2d 753 (1975); and 43 A.L.R.3d 793-97.
The purpose of this rule is to afford an injured party remedial relief for injuries sustained by him from the contemnor's contemptuous acts.[2] We can perceive no set of circumstances more fully justifying this exception than the case before us. For these reasons, and because the trial Court did not abuse its discretion in this regard, attorneys' fees incurred in the civil contempt proceedings are properly recoverable as an element of damages in the instant action.
As we stated in Ex parte Moody, supra, however, no attorneys' fees are recoverable in criminal contempt proceedings. Therefore, the $7,500 awarded as attorneys' fees for the criminal contempt proceeding, recovered by Protective, must be disallowed.
Having determined that attorney's fees are recoverable as an element of damages in civil contempt proceedings, we turn now to the more difficult question: Whether the judgment was supported by adequate evidence. The only damages recoverable are those proximately resulting from Moody's contemptuous acts — i.e., his violations of the January 6 injunction. These include both damages resulting from the defense of the Allmon
action, including its appeal, and those incident to the civil contempt proceeding itself.
 III.
Initially, we will address contentions raised by Moody concerning Protective's action. *Page 1120 
As Moody correctly points out, the trial Court made mathematical errors in calculating the appropriate recoveries. It is axiomatic that we are authorized to correct such mistakes and adjust the recovery accordingly. See Jones v. Gladney,339 So.2d 1019 (Ala. 1976).
By multiplying the total number of hours worked, by the appropriate hourly rate, the maximum sum recoverable is $34,774.50 — not $36,508. Similarly, the award of $32,000 for the contempt proceedings must be reduced to $30,454. Thus, the trial Court's award of damages must be reduced by a total of $3,279.50 due to mathematical errors.
Moody further contends that, because the Receiver has previously paid Protective $8,000, the judgment should be reduced by this amount. This question, however, is one properly between the Receiver and Protective. Moreover, the danger of double recovery was effectively eliminated by the trial Court's charge to the jury in the Receiver's suit.
Moody also argues that, because the original complaint inAllmon was filed prior to the January 6 injunction, the only damages recoverable are those incurred in directly opposing theAllmon amendment. This argument is without merit because, for all practical purposes, Allmon had been effectively dismissed prior to the filing of the amended complaint. Therefore, theAllmon action is almost entirely predicated upon the amended complaint, and the damages incurred proximately result from it.
Similarly, Moody asserts that the amounts expended in theAllmon appeal are not recoverable because this was not specifically proscribed by the January 6 injunction. As stated, however, Allmon was based almost entirely upon the amended complaint and, therefore, the appeal was merely an extension of the contemptuous act. Moreover, to hold otherwise would be to punish certain acts, while rewarding others which foster the very result proscribed. Clearly, the law is not so inane. Moody's acts were in continuous contemptuous disregard of the trial Court's orders.
We hold that the damages, as reduced and corrected, are properly allowable. Therefore, the judgment in Protective's action, as corrected, in the sum of $165,228.50, is affirmed and the cause is rendered.
 IV.
In the Receiver's suit, the jury awarded $50,000 in compensatory damages. The remittitur effected a reduction to $37,000. The Commissioner only claimed attorneys fees and expenses. Though the evidence shows a reduction in value to the policyholders, these damages were not claimed in the complaint. The only other damages shown to have been incurred relate to attorneys' fees and certain expenses incident thereto. Upon this Court's thorough examination of the record, it is apparent that the evidence does not fully support the compensatory award of $37,000; however, the evidence does support $16,844.00 in attorneys' fees and $1,271.78 as expenses,[3] for a total award of $18,115.78. Therefore, our affirmance is conditioned upon the filing by the Receiver of a remittitur in this Court in the amount of $18,884.22 within 30 days hereof. Otherwise, this cause will be reversed and remanded for a new trial on the issue of damages.
 V.
The question of whether punitive damages are recoverable was answered in the affirmative by Lightsey. The fact that it may punish the particular defendant does not render this award violative of the criminal contempt statute (Tit. 13, §§ 9, 143, Code) because it is well settled that exemplary damages are not to be equated with criminal punishment. Moreover, in the absence of excessiveness so as to indicate prejudice *Page 1121 
or passion, the amount of such damages is within the sound discretion of the trier of fact. Trahan v. Cook, 288 Ala. 704,265 So.2d 125 (1972); Badgett v. McDonald, 53 Ala. App. 726,304 So.2d 228 (1974); and Williams v. Clark, 50 Ala. App. 352,279 So.2d 523 (1973). For these reasons, the punitive awards will not be altered.
 Conclusion
Shearn Moody, Jr., continuously disobeyed orders of the trial Court and, therefore, was held in civil contempt. We have held in Lightsey that those who successfully prosecute such contempt proceedings may recover compensatory and punitive damages occasioned by the contemptuous acts. Save the above-noted exceptions, the evidence supports the judgments of the trial Court. Thus, we affirm the judgment in favor of Protective, as corrected; and we affirm the judgment in favor of the Receiver, subject to the filing of a remittitur in its action, as set out above. Unless the Receiver files a remittitur in the above-stated amount within 30 days from this date, the judgment will be reversed and the cause remanded.
In each case, costs of appeal will be taxed to the Appellee; moreover, neither Appellee is entitled to the 10 per cent penalty under § 12-22-72, Code 1975. In Protective's suit, it must be recognized that "[w]hen a judgment is corrected and affirmed on appeal, with any substantial change in the amount or terms of the judgment, favorable to the appellant, the costs of the appeal are automatically cast upon the appellee. . . ."Western Union Telegraph Co. v. Bashinsky, Case Co., 217 Ala. 661,666, 117 So. 289, 293 (1928). See also Ex parte GeneralMutual Insurance Co., 285 Ala. 445, 233 So.2d 230 (1970). Furthermore, § 12-22-72, Code 1975, is not applicable in circumstances such as this. Chapman v. Rivers ConstructionCompany, Inc., 284 Ala. 633, 227 So.2d 403 (1969); and New YorkLife Insurance Co. v. Reese, 201 Ala. 673, 79 So. 245 (1918).
As to the Receiver's action, if the remittitur is duly filed, the judgment will stand affirmed. Without the provision of the remittitur statute, the judgment would have had to be reversed because of the excessive award. In this light, Appellant Moody was the successful party in the appeal. Ex parte General MutualInsurance Company, supra. For this reason, the 10 per cent penalty is not to be assessed, and the Receiver will be taxed with the applicable costs. See Williams v. Williams, 283 Ala. 292, 216 So.2d 181 (1968); and City of Anniston v. Douglas,250 Ala. 367, 34 So.2d 467 (1948).
AFFIRMED, AS CORRECTED, AS TO PROTECTIVE. AFFIRMED CONDITIONALLY AS TO THE RECEIVER.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.
[1] The trial Court's order is explicit in relating the remittitur to the award of compensatory damages.
[2] The necessity of relief of this type has been most recently acknowledged in Cook v. Ochsner Foundation Hospital,559 F.2d 270, (5 Cir. 1977).
[3] In fact, a substantial portion of this latter figure of $1,271.78 also represents attorneys' fees paid by the Receiver pursuant to a court order for reimbursement of attorneys' fees incurred by a court-appointed insurance reorganization consultant who was a named defendant in the Allmon action.